INHABITANTS OF YARMOUTH

*versus*

INHABITANTS OF NORTH YARMOUTH.

By the act of 1849, incorporating the town of Yarmouth from territory formerly a part of North Yarmouth, " together with all the persons having a legal settlement thereon," those persons whose legal settlement as paupers was at the time of the act, in that part constituting North Yarmouth, but who at that time were inmates of the poor-house upon that part constituting Yarmouth, and supported by the original town, where they had been for more than five consecutive years immediately preceding the act incorporating the new town, are not made chargeable as paupers to the town of Yarmouth.

The language of the act, " together with all persons having a legal settlement thereon," must be satisfied by referring to such persons as by the operation of other laws would have a right to a support from the town then incorporated, when it had previously an independent existence.

The facts in this case were agreed by the parties.

The ACTION is ASSUMPSIT to recover for the support of paupers.

It is agreed, for the purpose of presenting the question herein submitted, that before the incorporation of Yarmouth, the persons named in the declaration, viz.: William Crocker, Temperance Clough, Stephen Hall, and Frances Chase, were supported as paupers of said town, by the town of North Yarmouth, at the poor-house and town farm of said town, which are in the territory now constituting the town of Yarmouth, as described in the act incorporating the same, as follows:

" All that part of the town of North Yarmouth lying southerly of the following described line, namely, beginning, &c., *together with all the persons having a legal settlement thereon,* is hereby incorporated into a separate town, by the name of Yarmouth."

Before the 20th day of August, 1849, the day when said act took effect, and up to that day, William Crocker had

been an inmate of the poor-house, and constantly supported there as aforesaid, since October 14, 1841. Temperance Clough and Stephen Hall had been inmates, and constantly supported at the same place, in the same manner, and up to the same time, for a longer period. Frances Chase had been in like manner supported, at the same place, from July 13, 1837, until August 13, 1842, when she escaped from the place, and left the state. She returned to the town of Yarmouth, September 17, 1849, and went at once to the poor-house.

The plaintiffs' claim is for supplies to these paupers, January 24, 1851, and subsequently, to recover for which this action is brought, and of which due notice and reply are admitted. The plaintiffs offered to prove, that before the respective dates, at which the above named persons became inmates of the poor-house, as before stated, they severally had their legal settlement in the town of North Yarmouth, as then constituted, and resided within the territory which, after the division of said town, constituted the present town of North Yarmouth, and for the purpose of determining the question, whether the plaintiffs can maintain an action against the defendants, upon the facts herein stated, it is agreed that such settlement and residence can be proved.

*Willis & Fessenden*, counsel for the defendants.

The persons named all had a settlement in the *town* of North Yarmouth, and not in any particular part thereof, at the time of division. There is no such thing as a legal settlement in any *part* of a town. Consequently, upon the division, the liability to support them must fall upon the part where they *dwelt* at the time; unless otherwise fixed by the act of division. *Mount Desert* v. *Seaville*, 20 Maine R., 341; R. S., ch. 32, s. 1, 4th specification; Laws of Maine, ch. 122, s. 2, 6th mode.

This act makes no change. "Having a legal settlement thereon," is the language. The settlement in a town must be where they dwelt, as before the division, they had no

settlement *on* any part of North Yarmouth. Frances Chase comes under the first clause of the same specification. *Sutton* v. *Dana*, 4 Pick. R., 117.

*Bradbury & Morrill*, counsel for the plaintiffs.

Prior to their support at the poor-house, the several paupers had their legal settlement in North Yarmouth, gained by residence upon the territory within the present limits of the town.

Crocker, Clough, and Hall were transferred from their respective homes to the poor-house, which was on the territory now constituting the town of Yarmouth, and there supported as paupers, from October 14, 1841, to the commencement of the action.

1. Neither the act of the legislature incorporating Yarmouth, nor their transfer to the poor-house, changed their settlement from North Yarmouth.

In the act dividing that town, the legislature undertook to prescribe what class of paupers should fall upon the new, and what upon the old town, for support. The act assigns to the new town "those persons having a legal settlement upon the territory within its limits."

The language of the act is as follows: "All that part of North Yarmouth southerly of the following limits, &c., together with all persons having a legal settlement thereon, is hereby incorporated into a separate town, by the name of Yarmouth."

Who are the persons thus made to constitute the inhabitants of the new town? Who are embraced by the language, "having a legal settlement thereon?"

This language has already received a judicial construction, and the legislature must be presumed to have adopted it, having reference to that construction.

In *Belgrade* v. *Dearborn*, 21 Maine R., 334, this language is held to include those persons who had acquired, upon the territory specified, such settlement as would give a right to support.

Yarmouth *v.* North Yarmouth.

It is held to designate the persons assigned to the new town, to wit: those who had acquired upon the territory thereof a legal settlement. By necessary implication all others are excluded. None others than those thus embraced are devolved upon it for support.

It follows, then, that those paupers who had acquired their settlement in North Yarmouth, by residence upon that part of it which was *not set off* and incorporated into Yarmouth, were not transferred by the act to the latter town, unless their support at the poor-house changed their settlement.

The case is not left to stand on the provisions of the *general law* applicable on the division of towns. It is taken out of their operation by the *special provision* in the act, which makes new and different arrangements in regard to paupers. Under this *new provision* the town of Yarmouth is made liable for the support of paupers residing in another town at the time of the passage of the act, if they had acquired a settlement in North Yarmouth by a residence of more than five years in the part incorporated into Yarmouth. Under the *general law* all this class of burdens would fall upon the old town of North Yarmouth. A large class of burdens is thus imposed by the act upon the new town, from which it would, under the general statute, be exempt.

It has imposed them, because, as has been justly held in *Belgrade* v. *Dearborn,* the language of the act must be regarded as specifying the burdens taken by such town; and by necessary implication excluding all others.

It will be seen by reference to the various acts for the division of towns, passed since the promulgation of the decision in *Belgrade* v. *Dearborn,* that the legislature has generally adopted and employed the language defined in that decision.

It has been adopted because it has been understood *to* have received a judicial interpretation, by our highest legal tribunal, prescribing and determining the burdens of the respective *towns.*

It was emphatically so in this case. A new decision, giv-

ing a different interpretation of this language, would work great injustice in all the various cases where the language used in this case has been employed.

And it would do more; it would impair the public confidence in the stability and consistency of the decisions of the court.

2. The transfer of these paupers to the poor-house, and their support there by the town, did not constitute such residence, as to change their settlement.

Their residence and domicile were upon other territory, where they had acquired a legal settlement. This could not be changed by the compulsory act of the town. A residence to give a settlement, must be a voluntary one. The insane at a hospital, prisoners confined in prison, and paupers at a poor-house, can acquire no settlement by dwelling involuntarily in those places.

In no just sense can these involuntary abodes be called their residence or domicile. Domicile depends on residence and *intention;* both are necessary to constitute it. *Wayne* v. *Green,* 21 Maine R., 357.

In *Mount Desert* v. *Seaville,* 20 Maine R., 341, the point decided is, that as the paupers in question did not dwell and have their home on the territory incorporated into the new town, their settlement remained in the old town, under the provisions of the general settlement act. The principle decided in that case does not apply to the case at bar. The former stood on the general law. In the latter the act of incorporation, by language employed for the express purpose, defines the liabilities of the parties, takes the case from the operation of the general act, and devolves upon the new town for support only those who had acquired a settlement and right of support by residence upon the territory thereof.

Such is the obvious intention indicated by the language used. Any other construction would fail to give effect to this language.

It could never have been the intention of the legislature to devolve all the paupers of both towns upon the new town

for support, because the poor-house in which they were confined chanced to be within its limits; and hence they employed language obviously intended to distribute these paupers between the towns, assigning to each such as had acquired their settlement within the limits thereof.

This construction sufficiently appears, and it is for the court to see that it shall not be frustrated.

As to Frances Chase, the remaining pauper, she did not dwell and have a home, nor was she staying within the limits of Yarmouth at its incorporation, and she falls upon the old town for support, even under the provisions of the general law.

*Willis & Fessenden,* in reply:

The case of *Belgrade* v. *Dearborn,* cited by the plaintiff's counsel, can have no further effect upon this case than as it defines what is meant by the words, "legal settlement," in statutes of this description, dividing towns. About this there is no dispute.

It is manifest, as we contend, that the phrase, "all persons having a legal settlement thereon," can have no application to persons residing on the original territory at the time of division. Such person, unless there is a special provision to the contrary, fall, necessarily, in the town embracing their place of residence at the time. The provision can apply only, and was meant only to apply, to persons having a legal settlement in the town divided, but residing elsewhere, and not having gained any other settlement, at the time of division.

Any other construction would lead to innumerable difficulties and absurdities. For instance, on the construction contended for by the plaintiff, a person residing on the territory constituted a new town, by the name of Yarmouth, at the time of division, having his domicile there, doing business and owning property there, not a pauper, or likely to become one, *but* who had acquired his original settlement in the town by a residence on the territory now North Yar-

mouth, and had not resided on the part now Yarmouth, for five years previous to the division, would, on the plaintiff's construction, belong to North Yarmouth *after* the division, and *vice versa*. A consequence clearly absurd and inadmissible.

The court, then, must perceive, that either this provision does not apply at all to persons residing on the original territory at the time of the division, *or* that as to persons so residing, " legal settlement" and " residence" at the time of division are synonymous; and this last is reasonable, because, by law, there is no such thing as a settlement in any *part* of a town. If a settlement exists, it is in the town as a *whole*, and on a *division* the legal settlement attaches to the residence at the time.

The act of division makes no distinction between paupers and other persons. The *language* is general, applying to " *all persons*," and the court, it is apprehended, can make no distinction which the legislature has not chosen to make, nor can the court provide for a case which the legislature has not provided for.

The statute says nothing of domicile, nor does the question of domicile arise. But it is clear that neither of these paupers had any home or domicile, at the time of division, or for a long time previous thereto, on the territory now constituting North Yarmouth. If they, or all but Chase, had no domicile in Yarmouth, they had none elsewhere. All they had was at the poor-house, and the statute says nothing of any former domicile. Their settlement was gained in the original town, and not in any particular part of it; and it *was* in the part now Yarmouth, at the time of division, for there they dwelt, and had their only home.

The case of Chase differs from the others in this, that she was absent from the *territory* at the time of the division. Had she resided in what is now North Yarmouth at the time she left, the statute dividing the town would have fixed her upon North Yarmouth, as she had gained no new residence. But her "legal settlement" at the time she left was in the

*original town*, and her residence—home—and consequently her "legal settlement," *after* the division, in what is now Yarmouth. Her settlement was *acquired* in what is now North Yarmouth, but it was continued in what is now Yarmouth, and the division found it there.

TENNEY, C. J.   By special laws of 1849, ch. 264, s. 1, the territory described therein, "together with all the persons having a legal settlement thereon, are hereby incorporated into a separate town, by the name of Yarmouth, and the inhabitants thereof are hereby invested with all the privileges and powers, and subjected to all the duties and liabilities incident to the inhabitants of other towns in this state."

The words, "together with all the persons having a legal settlement thereon," will not admit of the construction, that such, and such only, as had a legal settlement thereon, in the technical meaning of the term "legal settlement," under pauper laws, should be citizens of the town incorporated.   This interpretation would allow to persons who had long resided and continued to reside elsewhere, and in some instances to those who had never resided in North Yarmouth, as existing before the division, the enjoyment of privileges, and subject them to the liabilities of resident citizens generally; and on the other hand, those who were at the time of the division, and before, inhabitants of the same territory could have no such privileges, and would be subject to no such liabilities as are incident to the inhabitants of other towns, if they had not a legal settlement in the town incorporated.   This would contravene constitutional provisions, and legislative enactments touching the elective franchise, and the liability to taxation.   It is also forbidden by the language in the act immediately succeeding, whereby the inhabitants are invested with privileges and made liable to duties incident to the inhabitants of other towns.   Such construction, the counsel for the defendant properly contends, would be absurd to such a degree that no one would insist upon it.

If the act had not contained the words, referring to per-

sons having a legal settlement on the territory incorporated into the town of Yarmouth, the section would be intelligible and perfect. And as in other cases of the division of towns, the general statutes touching the support of paupers, would furnish the rules for the guidance of the two towns in this respect. But the words are important in their abstract signification, and were inserted in the act for some purpose, and effect must be given to them, if possible. The "persons" here referred to, were designed in some event, or under some circumstances, to hold a relation to the town incorporated.

In the annexation of a part of the town of Dearborn to the town of Belgrade, in 1839, by ch. 553, s. 1, of special laws, that part of Dearborn therein described, "with the inhabitants having a legal settlement thereon," is set off therefrom and annexed to the town of Belgrade. It will be perceived, that the language in that act, quoted above, is identical with that which we are now considering, excepting that in the former 'the word "inhabitants" is used for the word "persons" in the latter.

In the case of *Belgrade* v. *Dearborn*, 21 Maine R., 334, the court give construction to the language contained in the act annexing a part of the one town to the other, and says, " a settlement so gained is what is intended by a legal settlement, viz.: a settlement which gives a right to a support from the town, in case of falling into distress and becoming necessitous." And notwithstanding the court further say, that the language might be satisfied by restricting them to such persons as had a legal settlement in Dearborn, and were at the time of the annexation actually resident on the part annexed, it was held to include all who had acquired their settlement on the territory annexed, although removed therefrom at the time of the annexation. Under this authority, the language in the act incorporating the town of Yarmouth must certainly be as comprehensive, and will embrace those persons who had previously acquired a legal settlement on the territory composing that town.

Yarmouth *v*. North Yarmouth.

It is insisted in defence, that a settlement in a town is in the town as a whole, and not upon a part of it, and that in a division the legal settlement attaches to a person according to his residence at the time of division. If such was the design of the authors of the act now under consideration, that design cannot be disregarded. It was, however, obviously intended not to provide that those having a residence on the territory of the new town, should by force of the act itself, have a legal settlement therein; but that all those who under the operation of other laws would have a right to a support from the town thus incorporated, in case of falling into distress, and becoming necessitous, provided that town had previously had an independent existence. It is not uncommon, in the division of towns, to provide that persons who should become chargeable to the town as paupers, should be considered as belonging to that town on the territory of which they had their settlement at the time of the division; and no practical difficulty has been found in giving effect to such provisions. As an example, may be mentioned the act of Massachusetts of 1814, incorporating the town of Bloomfield, which received a construction of this court in the case of *Bloomfield* v. *Skowhegan*, 16 Maine R., 58.

The parties agree that for the purpose of settling legal questions raised in the case, all the persons for whose support this action was commenced, had a legal settlement in the town of North Yarmouth as existing before the division, and had resided upon the territory which after the division constituted the present town of North Yarmouth, that all the paupers had been in the poor-house of the original town, situated on the territory of the town of Yarmouth for a much longer period than five years immediately before the act of division took effect, that three of them were actually inmates of the poor-house at that time; and that the fourth had escaped a few years before and left the state, but returned on September 27th, 1849, but was absent therefrom when the act went into operation.

The poor-house was for the accommodation of paupers of
24

the whole town, and they were supported at the common expense before the division. If it were designed that all the paupers resident at the poor-house when the act took effect, were to be supported exclusively by the town of Yarmouth afterwards, when the act provides for an equitable division of the joint property, including the farm on which the poor-house stood, and other joint burdens, unequivocal language in reference thereto would be expected. None, however, is found.

While the persons named in the writ were receiving aid as paupers, a residence in a town, a stranger to this controversy, for any length of time would not relieve the original town of North Yarmouth of any of its obligations. And by no principle known to the court, can a legal settlement be any better transferred by a change of residence from one part of the same town to another, when such a change would be entirely ineffectual if made into another town.

On the facts presented in the case, the plaintiffs are entitled to reimbursement of the sums expended in the necessary relief of the persons named in the writ; and according to the agreement of the parties, the action must stand for trial.

DAVIS, J., concurred in the result.